944 So.2d 1189 (2006)
Steven Michael ZERBE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3099.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
Rehearing Denied January 24, 2007.
*1190 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his convictions and sentences on one count of lewd and lascivious molestation and one count of child abuse. He has raised several issues, two of which we find have merit: (1) the denial of the defense motion for judgment of acquittal and (2) the admission of collateral act evidence. We reverse his convictions and remand the case to the trial court to vacate the conviction on the child abuse count and to conduct a new trial on the lewd and lascivious molestation count.
The defendant was a karate instructor; he operated his studio out of an old one-room schoolhouse. The students were both male and female and ranged in age from young children to adults. The schoolhouse was located in a wooded area and did not have indoor plumbing. The port-o-lets behind the schoolhouse were often turned over. As a result, the students used the wooded area and buckets as bathroom facilities.
Around Easter, a five-year-old female student was changing her clothing for class when her grandmother entered the dressing area and observed the child with her pants down around her ankles and the karate instructor standing nearby. She asked her granddaughter why her pants were down. The child replied that her *1191 instructor had told her to pull them down.[1] The child and grandmother remained at the studio for the activities that evening without further discussion of the incident. When the grandmother took the child home, she called the child's mother and told her what had happened.
This call prompted the child's mother to contact the parents of an eleven-year-old girl, who also attended class at the studio. Those parents in turn questioned their daughter, who initially had nothing to report, but then told them that the instructor pestered her to go to the bathroom. Subsequently, she told her parents about an incident that occurred approximately six months earlier.
According to the eleven-year-old, she was standing on the back porch of the schoolhouse and needed to use the bathroom. She did not want to go into the woods. The instructor told her it would be easier for her if she could urinate from a standing position. He told her to remove her pants and stand with her legs apart, at which point he touched her genital area. On another occasion, when the young girl did not have to use the bathroom, the instructor squeezed her stomach and said that maybe she could go then. These incidents involving the eleven-year-old are the basis of the molestation count.
The eleven-year-old child also told her parents that the instructor repeatedly told her to go to the bathroom, which annoyed her. It is these repeated requests that are the subject of the child abuse count. Throughout the trial, and specifically in closing argument, the State limited the child abuse count to these facts; it did not include the touching incidents as part of the child abuse count.[2]
Prior to trial, the State filed a "Notice of Intention to Use Hearsay Statement of Child Victim Pursuant to Florida Statute 90.803(23)." The Notice related to the use of statements made by the five-year-old to her grandmother, her mother, her father, and the detective. The defense moved to exclude those statements and argued the five-year-old was incompetent to testify. After a hearing on the matter, the trial court found the five-year-old competent and available to testify. The court further found sufficient safeguards of reliability because the statements could be corroborated by the grandmother's testimony.
The State then filed a "Notice Pursuant to Florida Statute 90.404(2)(a) and/or (b)." The State argued that the collateral act evidence (the incident with the five-year-old) was relevant because of the similarities of the two incidents: 1) the same location; 2) the same relationship between the defendant and the girls; 3) both girls were Caucasian and under the age of eleven; 4) the same form of touching; and 5) the incidents focused on the defendant's insistence that the girls go to the bathroom.
In its opening statement, the State did not refer to the incident involving the five-year-old. When the State called the five-year-old's grandmother to the stand, the trial court failed to give a limiting instruction. Shortly thereafter, the court held a sidebar conference and instructed the jury that it would receive "evidence of other crimes allegedly committed by [the defendant] . . . [the defendant] is not on trial for *1192 any alleged offense against [the five-year-old]." (Emphasis added). The next morning, the defense advised the court that the limiting instruction had referred to the collateral acts as crimes, and requested that the jury be properly instructed. Specifically, the defense requested the court not to use the words "crime" or "wrongful". The trial court then told the jury it misread the instruction and re-instructed them as follows:
The evidence you are about to receive concerning evidence of other acts committed by the defendant will be considered by you only for the purposes of corroborating the testimony of [the victim] and you should consider it only as it relates to the issue of corroborating. And [the defendant] is not on trial for any acts involving the [five-year-old] child.
(Emphasis added).
The defense moved for a judgment of acquittal at the close of the State's case. With regard to the child abuse count, defense counsel argued there was absolutely no evidence that the defendant intended to cause mental injury to the child or that any mental injury had in fact occurred. The trial court denied the motion. The defense renewed the motion at the close of the defense case.
During closing arguments, the five-year-old's statements were prominent. The State recounted the grandmother's testimony. The defense argued that the eleven-year-old had fabricated the story.
The jury found the defendant guilty of the two counts charged. The jury also answered a special interrogatory requested by the State to avoid a perceived double jeopardy issue. The question was: "Did [the defendant] commit the crime [of child abuse] without engaging in conduct that was lewd or lascivious?" The jury responded in the negative.
Immediately after the jury was discharged, the State raised the double jeopardy issue with the trial court. The State was concerned that the jury's answer to the special interrogatory meant that the defendant did not commit child abuse outside of the lewd or lascivious act for which he was charged with molestation. Therefore, it posited the defendant's right against double jeopardy would be violated if the court sentenced the defendant on the child abuse count. To avoid the problem, the State did not include the child abuse count on the defendant's scoresheet. Subsequently, however, the State reversed its position and advised the court that it could sentence the defendant for both offenses. Nevertheless, the State did not ask the court to do so.
The trial court denied the defense motion for new trial and adjudicated the defendant guilty on the molestation count. The court sentenced the defendant to ninety months in prison followed by fifteen years of sex offender probation and found him to be a sexual predator. The court also adjudicated him guilty of child abuse but did not sentence him on that count. The trial court denied the defense motion for rehearing.
The defendant first argues the trial court erred when it denied his motion for judgment of acquittal on the child abuse count. The State responds that the statute does not require proof of an actual injury.
Generally, "an appellate court will not reverse a conviction that is supported by competent, substantial evidence." Johnston v. State, 863 So.2d 271, 283 (Fla.2003). However, a judgment of acquittal is proper if the State fails to prove a prima facie case of guilt when the evidence is viewed in the light most favorable to the State. Espiet v. State, 797 *1193 So.2d 598, 601 (Fla. 5th DCA 2001). We review court rulings on motions for judgment of acquittal de novo. Johnston, 863 So.2d at 283.
The legislature defined child abuse, in part, as "[a]n intentional act that could reasonably be expected to result in . . . mental injury to a child." § 827.03(1)(b), Fla. Stat. (2002). The term "mental injury" is defined as "an injury to the intellectual or psychological capacity of a child as evidenced by a discernable and substantial impairment in the ability to function within the normal range of performance and behavior." § 39.01(43), Fla. Stat. (2002); see DuFresne v. State, 826 So.2d 272, 277-78 (Fla.2002). The offense of child abuse under subsection (b) does not require proof of actual injury; rather, the offense includes any act that is done intentionally that could reasonably be expected to cause mental injury. Clines v. State, 765 So.2d 947, 948 (Fla. 5th DCA 2000).
To survive a motion for judgment of acquittal, the State must establish a prima facie case. The State chose to proceed on the child abuse count solely on the allegation that the defendant pestered the victim about going to the bathroom. In closing argument, the State specifically restricted the count to these facts and advised the jury that the count had nothing to do with the touching. The question then becomes whether the evidence established a prima facie case for child abuse as defined by the applicable statutory subsection. We hold it does not.
We find this case similar to King v. State, 903 So.2d 954 (Fla. 2d DCA), review denied, 908 So.2d 1058 (Fla.2005). There, the court reversed a school administrator's conviction for child abuse based on the paddling of an eight-year-old child. The Second District concluded that as a matter of law, "the injuries inflicted during the paddling did not constitute felony child abuse." Id. at 955. We find the same to be true here. There simply was no evidence that the defendant's repetitive requests for the child to go to the bathroom was done intentionally or "could reasonably be expected to cause mental injury." We find that as a matter of law, these facts taken in the light most favorable to the State, are insufficient to establish a prima facie case of child abuse. We therefore reverse the defendant's conviction on that count.
The defendant's second argument concerns the trial court's admission of collateral act evidence. The defendant argues the trial court abused its discretion in admitting evidence of the incident with the five-year-old because it was not similar to the crime charged, occurred during different time frames, and was extremely prejudicial. The State suggests the evidence was relevant and corroborated the victim's testimony. Alternatively, the State suggests any error was harmless.[3]
"A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." Dessaure v. State, 891 So.2d 455, 466 (Fla. 2004). The same standard applies to rulings on admitting collateral act evidence. LaMarca v. State, 785 So.2d 1209, 1212 (Fla.2001). However, this wide discretion is limited "by the rules of evidence." Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001).
In child molestation cases, "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation *1194 is admissible, and may be considered for its bearing on any matter to which it is relevant." § 90.404(2)(b)1., Fla. Stat. (2001). To be admissible, the State must present clear and convincing proof that the collateral act occurred. McLean v. State, 934 So.2d 1248, 1262 (Fla.2006). The defendant's due process rights are protected by the requirement that the trial court balance the relevance of the evidence to a material issue and the danger of unfair prejudice. Id. at 1259; §§ 90.402, .403, Fla. Stat. (2002).
In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.
Id. at 1262. The trial court should also assess whether the evidence is cumulative and whether it becomes a feature of the trial. Id. Lastly, the trial court must give appropriate cautionary instructions at the time the evidence is admitted and during its final instructions to the jury. Id.
The threshold question is whether there is clear and convincing evidence that the defendant committed the collateral act. Here, the evidence concerning the five-year-old was in conflict; it cannot be said that it was clear and convincing. Second, that evidence did not tend to prove or disprove any fact concerning the molestation charge. Third, there was no need to lay out the sequence of events giving rise to the charged crime after the testimony concerning the molestation charge had been elicited earlier in the trial.
Fourth, the acts were not sufficiently similar. While both events occurred at the karate school the charged crime involved a touching while the collateral act involved the defendant's observation of a young child partially undressed. Fifth, the events took place five-and-a-half months apart with the collateral act occurring subsequent to the charged crime. Sixth, the probative value was outweighed by the prejudicial effect of the collateral act evidence.
And last, the mandated cautionary instruction was improper. The first instruction referenced other crimes allegedly committed by the defendant. Since this was not an accurate representation of the facts, the next morning, the court instructed the jury a second time. While correcting an error from the day before, the second instruction again called attention to the collateral act evidence.
This analysis causes us to conclude that the trial court abused its discretion in admitting the collateral act evidence in this case. We cannot say that this error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We therefore reverse the defendant's convictions and remand the case to the trial court for a new trial on the lewd and lascivious molestation count and to vacate the conviction for child abuse.
Reversed and Remanded.
POLEN and KLEIN, JJ., concur.
NOTES
[1] The testimony was in conflict as to whether the grandmother followed the instructor into the changing area when the instructor entered or simply saw her granddaughter exit the dressing area with the instructor behind her.
[2] The Information merely tracked the language of the child abuse statute and did not include the facts giving rise to the charge. See § 39.01(43), Fla. Stat. (2002).
[3] The State also argues that the defendant failed to preserve the issue. We disagree. The issue was raised in a pre-trial hearing, and defense counsel twice objected to the admission of the evidence. See § 90.104(1), Fla. Stat. (2005).